## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

**ADVANSIX, INC.**

        **Plaintiff,**

**v.**                                              **Case No. _____**

**M/V "AMAZON", (IMO No. 9138616,**
**Official No. 732165) her gear, tackle, apparel,**
**engines, and appurtenances,** *in rem*

**AMAZON NAVIGATION CO., LTD.,** *in personam*

c/o    The Trust Company of Marshall Islands, Inc.
       Trust Company Complex
       Ajeltake Road
       Ajeltake Island, Majuro
       Republic of Marshall Islands, MH 96960

**and**

**TIDE LINE, INC.,** *in personam*

1-3 Filellinon
Piraeus 185 36
Greece

        **Defendants.**

## VERIFIED COMPLAINT

    NOW COMES Plaintiff, AdvanSix, Inc. (hereinafter, "AdvanSix"), by counsel, and as and for its Verified Complaint against the Defendants, M/V AMAZON, her engines, tackle, equipment, appurtenances, etc. *in rem*, (hereinafter, the "Vessel") Amazon Navigation Co., Ltd., *in personam*, (hereinafter, the "Owner") and Tide Line, Inc. (hereinafter, the "Operator/Charterer" and collectively, "the Defendants"),states as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.     This is an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333, the Admiralty Extension Act, 46 U.S.C. § 3010, *et seq*., and Rule 9(h) of the Federal Rules of Civil Procedure because this dispute involves the Vessel's allision with AdvanSix's marine terminal in Hopewell, Virginia (hereinafter, the "Hopewell Terminal"), which is located on the navigable waters of the James River, on June 19, 2018.

2.     Cargo operations are a traditional maritime activity and this casualty was disruptive of maritime commerce; therefore, this Court's federal admiralty jurisdiction applies.

3.     In the alternative, this Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and between a citizen of a state and a citizen or subject of a foreign state, and because the amount in controversy, exclusive of interest and costs, is well in excess of $75,000.00.

4.     AdvanSix, the owner of the Hopewell Terminal, is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business located in Parsippany, New Jersey.

5.     Nitron Group Corporation is a corporation organized under the laws of the State of Connecticut with its headquarters and principal place of business located in Greenwich, Connecticut.

6.     Amazon Navigation Co., Ltd., the Owner of the Vessel, is a Marshall Islands corporate entity with its headquarters and principal place of business located in Ajeltake Island, Majuro, Marshall Islands.

7.     Tide Line, the Operator and or Charterer of the M/V AMAZON, is a Greek corporate entity with its headquarters and principal place of business located in Piraeus, Greece.

I-1609055.1

8. The Vessel—the M/V AMAZON, IMO No. 9138616, Official No. 732165—is a 560-foot Bahamian flagged bulk carrier, registered in Nassau, owned by Amazon Navigation Co. Ltd. and chartered to Tide Line, Inc. during all relevant times. The United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited, as protection and indemnity insurers for M/V AMAZON, executed in favor of AdvanSix a Letter of Undertaking dated July 3, 2018 *inter alia* agreeing to file or cause to be filed an *in rem* appearance on behalf of M/V AMAZON in this action in lieu of arrest or any other surety, a true and accurate copy of which is attached hereto as **Exhibit 1**. As such AdvanSix is filing the Letter of Undertaking herewith in lieu of arrest of the Vessel.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Vessel, the Owner, and the Charterer are subject to this Court's personal jurisdiction by virtue of the fact that a substantial part of the events or omission giving rise to AdvanSix's claim(s) occurred within this District at the Hopewell Terminal located in Hopewell, Virginia and SeaGate Terminal in Norfolk, Virginia.

10. In the alternative, Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because the M/V AMAZON is now, or will be during the pendency of this action, within this district or otherwise subject to the jurisdiction of this Honorable Court, and because, the Owner, and the Operator/Charterer directed the Vessel giving rise to this action at AdvanSix's Hopewell Terminal, which is located within this District.

## FACTUAL BACKGROUND

11. AdvanSix contracted with Nitron Group Corporation on April 9, 2018 to load approximately 23,000 metric tons of ammonium sulfate aboard a bulk carrier nominated by Nitron for carriage to an unnamed port in West Africa (hereinafter, the "Contract").

I-1609055.1

12.     AdvanSix's "General Terms and Conditions of Sale and Shipping Terms" applied by incorporation to this Contract.

13.     The bulk carrier nominated by Nitron for carriage was the Vessel.

14.     The AdvanSix "General Terms and Conditions of Sale and Shipping Terms" required that the Vessel "shift/warp" under the Hopewell Terminal's loading assembly as ordered by the shipper, free of expense, and with laytime counting.

15.     Bulk carrier vessels are loaded at the Hopewell Terminal through the use of that terminal's loading assembly, which includes a conveyor belt that moves cargo onto a loading chute that funnels cargo through an overhanging loading spout and into a cargo hold.

16.     On or about June 3, 2018 a "Pre-Stowage Plan" was provided to AdvanSix outlining the load amounts of ammonium sulfate that would be loaded in each of the Vessel's five cargo holds, which are numbered 1 through 5 from the Vessel's bow to her stern.

17.     The Pre-Stowage Plan estimated that the Hopewell Terminal, *via* its loading assembly, would load approximately 15,000 metric tons of cargo into the Vessel's numbered cargo holds.

18.     On or about June 3, 2018 the Vessel's particulars were provided to AdvanSix in conjunction with her nomination by Nitron Group Corporation

19.     According to the Vessel's Statement of Facts, the Vessel arrived at the Hopewell Terminal on the evening of June 18, 2018 and the Vessel's loading began at approximately midnight on June 19, 2018.

20.     At or near the time the Vessel arrived at the Hopewell Terminal on June 18, 2018, the Vessel's Master (or representative) was presented a copy of AdvanSix's Terminal Rules (a true and correct copy of AdvanSix's Terminal Rules is attached to this Complaint as **Exhibit 2**).

I-1609055.1

21.     AdvanSix's Terminal Rules set forth the responsibilities and obligations of the Vessel and its crew during the Vessel's time at its marine terminal, including its Hopewell Terminal.

22.     Specifically, AdvanSix's Terminal Rules provided:

**"8.     The mooring lines and keeping the vessel secure to the berth at all times is the responsibility of the Master."**

. . .

**"Signature of vessel's representative acknowledging receipt and understanding of these instructions."**

**(Ex. 2)** (emphasis added).

23.     The Vessel's Master (or representative) signed, and thereby agreed to, AdvanSix's Terminal Rules on June 18, 2018.

24.     After the Vessel arrived at the Hopewell Terminal, she was moored along a 627-foot pier located on the south side of the Hopewell Terminal.  The pier extends from the shore in a northeastern direction, bearing 073°.

25.     The Hopewell Terminal's pier is configured with ten bollards on each side.  In addition to those twenty bollards, an additional bollard is located on the west shore on the south side of the pier.  Finally, there is a bollard located on a concrete dolphin just off the end of the pier on its east end. The Hopewell Terminal's pier bollards are identified as N1/S1 beginning near the shore and ending at N10/S10 at the east end of the pier.

26.     The Hopewell Terminal's pier was sufficient in its length and number of bollards to provide proper mooring points for securing the safe berthing of the Vessel at all times during its cargo loading operations at the Hopewell Terminal on June 19, 2018.

I-1609055.1

27.     When the Vessel's Hold No. 1 was placed under the Hopewell Terminal's loading spout on June 19, 2018, the Vessel was moored to five bollards on the Hopewell Terminal's pier using six sets of doubled mooring lines.

28.     The Vessel's mooring lines, however, were in poor condition and suffering from wastage and strain, as evidenced by those lines' broken strands and the fact that some of those mooring lines snapped during a seasonal summer thunderstorm.

29.     After approximately seven hours of loading Hold No. 1, at 6:45 AM on June 19, 2018, the Vessel was warped 75-feet forward at the Hopewell Terminal's pier so that the Hopewell Terminal's loading spout would line up over her Hold No. 5.

30.     Repositioning of the Vessel was completed at around 7:15 AM on June 19, 2018, and, according to the Statement of Facts, no further shifting or warping of the Vessel was needed.

31.     When the Vessel was warped 75-feet forward, however, the Vessel's mooring configuration stayed the same—the Vessel continued to be moored to the same five bollards on the Hopewell Terminal's pier using six sets of doubled mooring lines—the only thing that changed was the position of the Vessel alongside the pier and, subsequent to that, which cargo hold fell under the Hopewell Terminal's hanging loading spout.

32.     In order to warp the Vessel forward and maintain her current mooring configuration, the Vessel's crew added slack to the mooring lines themselves, allowing the Vessel to move forward until her Hold No. 5 lined up under the Hopewell Terminal's loading spout.

33.     At approximately 6:05 PM on June 19, 2018, while the Vessel was undergoing final cargo loading operations, AdvanSix employees working on the Hopewell Terminal's pier

I-1609055.1

noticed that inclement weather was approaching and the Hopewell Terminal's loader operator communicated the same to the Vessel's crew.

34.     As Hopewell Terminal's loader was dumping the last of the cargo from Hopewell Terminal's conveyor belts into the Vessel's Hold No. 5, at or about 6:20 PM on June 19, 2018, high north-north easterly winds preceding a summer thunderstorm pushed against the Vessel's port beam alongside the Hopewell Terminal's pier and strained the Vessel's stern set of spring mooring lines, eventually breaking them.

35.     The Hopewell Terminal's pier and its bollards did not fail preceding or during the thunderstorm on June 19, 2018.

36.     Without these stern spring lines, the Vessel unsecured from her berth at the Hopewell Terminal's pier and began to swing off the berth.

37.     During this time, the Vessel's Hold No. 5 and its coaming, now moving away from the Hopewell Terminal's pier with the wind, allided with the Hopewell Terminal's loading assembly.

38.     As the Vessel allided with the Hopewell Terminal's loading assembly, the loader operator lost all means of control, and he had to exit the loader for fear of his own safety.

39.     The Vessel swung approximately 82-feet off the berth before the Vessel's stern mooring lines, which had been extended to allow the Vessel to warp 75-feet forward, prevented the Vessel from swinging any farther.

40.     Due to the Vessel's unsecured swing, the Hopewell Terminal's loading assembly, specifically its loader chute and spout, were heavily damaged and cargo on the loading assembly's conveyor belt was lost due to the inability to operate the loader's conveyors to load or otherwise return the cargo to AdvanSix's inventory.

I-1609055.1

41.     The Vessel's allision with the Hopewell Terminal's loading assembly was not due to any fault of the Hopewell Terminal or its personnel.

42.     The Vessel's allision with the Hopewell Terminal would have been avoided had the Vessel been properly and securely moored to the Hopewell Terminal's bollards with adequate lines.

43.     Upon information and belief, no other vessels or barges in the vicinity of the Hopewell Terminal were reported to have broken free due to the winds preceding the thunderstorm on June 19, 2018.

44.     As the owner of the Hopewell Terminal, AdvanSix is responsible for repair and maintenance of that facility and its loading assembly.

45.     As a result of the foregoing allision, AdvanSix could not load barges or vessels at the Hopewell Terminal after June 19, 2018 until the Hopewell Terminal's loading assembly was temporarily repaired.

46.     AdvanSix completed the temporary repairs to the Hopewell Terminal's loading assembly on July 5, 2018, at which time loading of barges and vessels resumed; however more permanent repairs are required.

47.      The estimated permanent repairs to AdvanSix's Hopewell Terminal, along with the costs of the temporary repairs already completed, will total, approximately, $531,311.78.

48.     AdvanSix generates 5,000 short tons of ammonium sulfate per day that is sold and transported from the Hopewell Terminal by vessel, rail car, and truck.

49.     Routine operations and shipping obligations to third-parties requires AdvanSix to retain charters of tugs, barges, and vessels to transport ammonium sulfate from its Hopewell

I-1609055.1

Terminal to the SeaGate Terminal in Norfolk, Virginia at an average rate of 5,000 short tons per week.

50.     As a result of the foregoing allision, from June 20, 2018 until July 5, 2018, AdvanSix could not load barges and vessels at its Hopewell Terminal and, in order to meet its shipment obligations to third-parties and transport ammonium sulfate from the Hopewell Terminal to the SeaGate Terminal, AdvanSix was required to transport all of its ammonium sulfate destined for the SeaGate Terminal by truck to the Shirley Plantation Terminal in Charles City, Virginia, where that cargo had to be offloaded into barges and marked for transport to the SeaGate Terminal.  Also, some trucking loads were sent directly from the Hopewell Terminal to SeaGate Terminal.

51.     The cost of using trucks to transport AdvanSix's ammonium sulfate from its Hopewell Terminal to Shirley Plantation Terminal and from the Hopewell Terminal to SeaGate Terminal was $434,443.40; the cost to offload that cargo onto barges destined for the SeaGate Terminal was $350,000.00; additional costs incurred for Hopewell Police assistance was $3,335.00; and necessary additional security was $11,493.00; totaling $799,271.40.

52.     As a result of the foregoing allision, the tugs and barges previously under contract to transport ammonium sulfate from the Hopewell Terminal to the SeaGate Terminal were employed to transport the same volume of ammonium sulfate from the Shirley Terminal to the SeaGate Terminal.  However, additional tugs and barges were needed to transport the remainder of the cargo from the Shirley Plantation Terminal to the SeaGate Terminal.  The cost of these additional tugs and barges was $109,796.12.

53.     As a result of the foregoing allision, maritime commerce was also disrupted.  Two vessels were adversely impacted by the inability to load cargo at the Hopewell Terminal between

June 20, 2018 and July 5, 2018.   Consequently, demurrage was paid on the M/V UBC SALAVERRY and M/V BALSA.  Demurrage for these two Vessels totaled $69,342.36.

**COUNT I –NEGLIGENCE**
**UNDER THE GENERAL MARITIME LAW**
**(against the Vessel, her Owner, and her Charterer)**

54.     AdvanSix incorporates, by reference, the allegations of paragraphs 1 through 53 of this Complaint as if set out in full herein.

55.     The General Maritime Law imposes liability against a vessel, *in rem*, and against that vessel's owner and charterers, *in personam*, if a vessel commits a maritime tort while acting on behalf of a vessel's master or that vessel's authorized representative.

56.     AdvanSix's Terminal Rules, and the general maritime law, required the Vessel, *via* her Master and crew, to provide adequate mooring lines and ensure that the Vessel was securely moored to her berth alongside the Hopewell Terminal's pier at all times.

57.     The Vessel's Master (or representative) signed and agreed to AdvanSix's Terminal Rules; therefore, the Vessel's Master accepted the duty, on behalf of the Vessel, her Owner, and her Charterer, to provide the Vessel's mooring lines and ensure that Vessel remained securely moored to her berth alongside the Hopewell Terminal's pier at all times.  This duty also exists under the general maritime law.

58.     The Vessel, however, was not securely moored at the Hopewell Terminal after she was warped forward at Hopewell Terminal's pier because the Vessel's mooring configuration was insufficient and her mooring lines used to haphazardly do so were dilapidated.

59.     The Vessel's mooring configuration was insufficient, *inter alia,* because it only allowed the Vessel to warp forward, it did not secure the Vessel alongside the Hopewell

10

I-1609055.1

Terminal's pier at all times, nor did the Vessel's mooring configuration otherwise protect the Vessel against an offshore wind out of the north-north east.

60.     A prudent and competent master would have ensured that the Vessel had at least one mooring line located on the bollard directly across from the Vessel's berth at a 90° angle from the axis of the Vessel to prevent the Vessel from blowing off her berth after she was warped forward, and the Vessel lacked this crucial mooring line.

61.     The inadequacy of the Vessel's mooring configuration preceding her allision with the Hopewell Terminal's loading assembly was further compounded by the dilapidated condition of the mooring lines that the Vessel utilized.

62.     A prudent and competent master would have ensured that the Vessel was equipped with staunch and strong mooring lines to accomplish her mission.

63.     The Vessel's mooring lines, however, were in too poor a condition to ensure the security of the Vessel at her berth alongside the Hopewell Terminal's pier.

64.     The Vessel's improper mooring at the Hopewell Terminal, in conjunction with her dilapidated mooring lines, allowed a seasonal summer thunderstorm's winds to break the Vessel's stern set of spring mooring lines, which enabled the thunderstorm's winds to push the Vessel away from her berth at the Hopewell Terminal's pier and into the Hopewell Terminal's overhanging loading assembly.

65.     The Vessel's improper mooring configuration and dilapidated mooring lines, constituted a breach by the Vessel's Master (or representative), who, acting on behalf of the Vessel, signed and agreed to assume the duty to ensure that the Vessel was securely moored at its berth alongside the Hopewell Terminal at all times.  This duty also existed independent of the Terminal Rules as well.

I-1609055.1

66.     This breach directly and proximately caused AdvanSix to suffer property damage to its Hopewell Terminal, including damage to that facility's loading assembly, amounting to $531,311.78, as well as extensive other consequential and economic damages amounting to $978,410.78.

67.     In the alternative, the *Louisiana* Rule also creates a rebuttable presumption of negligence and fault against a moving vessel when it allides with a stationary object, and application of the *Louisiana* Rule's rebuttable presumption of fault will satisfy a plaintiff's *prima facie* case of negligence against a vessel.

68.     The *Louisiana* Rule applies because the Vessel was not operating under its own power when the wind from the thunderstorm pushed the Vessel, and its Hatch No. 5, away from the Hopewell Terminal's pier and into the Hopewell Terminal's loading assembly.

69.     Because the *Louisiana* Rule applies, the Vessel is presumptively at fault.

70.     As a result, the Vessel, the Owner, and/or the Operator/Charterer are thus liable to AdvanSix for the Vessel's negligence in the amount of $1,509,722.56 for which a maritime lien attaches to the Vessel for which it is liable *in rem*.

## PRAYER FOR RELIEF

71.     AdvanSix repeats and re-alleges paragraphs 1 through 70 of this Complaint as if set forth in full herein.

72.     Upon information and belief AdvanSix expects it will incur $531,311.78 in costs to repair its Hopewell Terminal as a result of the Vessel's allision.  This estimated cost includes the costs of its initial temporary repair to the loading assembly and the permanent repairs that are now required.

I-1609055.1

73.    AdvanSix has incurred consequential and economic damages totaling $976,089.90, which include the costs of using trucks to transport AdvanSix's ammonium sulfate from its Hopewell Terminal to the Shirley Plantation Terminal and/or directly to SeaGate Terminal($434,443.40); the cost to offload that cargo onto barges destined for the SeaGate Terminal ($350,000.00); additional costs incurred for Hopewell Police assistance ($3,335.00); necessary additional security was ($11,493.90); the cost of procuring additional tugs and barges to transport the remainder of the cargo from the Shirley Plantation Terminal to the SeaGate Terminal ($109,796.12); and demurrage charges for at least two vessels that were delayed as a result of the Vessel's allision with the Hopewell Terminal ($69,342.36).

74.    Given the foregoing, AdvanSix is entitled to the judgment of this Court against the Vessel, her Owner, and her Charter, jointly and severally, in the amount of $1,509,722.56 plus pre and post-judgment interest available under the General Maritime Law.

**WHEREFORE,** Plaintiff AdvanSix, Inc. prays that this Court enter judgment in its favor and against the M/V AMAZON, *in rem*, Amazon Navigation Co., Ltd., *in personam*, and Tide Line, Inc. *in personam* in the amount to be proved at trial but not less than $1,509,722.56, plus pre and post- judgment interest, and for such other and further relief as this Court may deem just and proper.

|  |  |
|---|---|
| Dated: June 11, 2019 | ADVANSIX, INC.<br>By: /s/ David H. Sump<br>David H. Sump (VSB No. 28897)<br>Justin G. Guthrie (VSB No. 91583)<br>*Counsel for Plaintiff AdvanSix*<br>WILLCOX & SAVAGE, P.C.<br>440 Monticello Avenue, Suite 2200<br>Norfolk, Virginia 23510<br>Phone:  (757) 628-5547<br>Fax:  (757) 333-3547<br>dsump@wilsav.com<br>jguthrie@wilsav.com |

I-1609055.1

## VERIFICATION OF COMPLAINT

BEFORE ME, the undersigned authority, personally came and appeared Justin L. Burkey, Jr. who deposed and said that he is an Ammomium Sulfate & Raw Materials Logistics Leader of AdvanSix, Inc., that he has read the above and foregoing Complaint and knows the contents thereof and that the same are true and correct based upon his personal knowledge and documents available to him; and that he is authorized to verify the Complaint filed herein.

Subscribed and sworn before me this __th day of June, 2019.

Patricia Branch
Notary Public

My commission expires:

Feb 28, 2021

PATRICIA ANN BRANCH
NOTARY PUBLIC
REG. #7746253
MY COMMISSION EXPIRES
Feb. 28, 2021
COMMONWEALTH OF VIRGINIA

[-1608900.1